13370

STATE v. DANIEL

(163 S. E., 721)

Messrs. *Cole L. Blease, Dobson & Dobson* and *J. K. Hamblin,* for appellant,

Messrs. *S. R. Watt, Solicitor,* and *G. W. Spear,* for respondent.

March 16, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant, T. D. Daniel, was tried in the Court of General Sessions for Cherokee County and was convicted of a breach of trust with fraudulent intent. The specific charge preferred against him was that, as a member of the Cherokee County Sinking Fund Commission, he came into possession of funds of the city of Gaffney required by law to be paid over to that commission for certain purposes, and on April 5, 1928, willfully and unlawfully appropriated $1,000 of these funds to his own use, with the intention of depriving and defrauding the owner thereof. The main question presented by the appeal is whether the trial Judge committed error in overruling defendant's motion for a directed· verdict, made upon the ground that there was a total lack of proof of the charge as laid in the indictment.

The testimony adduced by the State tended to establish the following facts: In 1908 the Legislature passed an Act creating the Cherokee County Sinking Fund Commission (Act Feb. 19, 1908 [25 St. at Large, p. 1412]), the purposes and duties of which were prescribed and fixed by statute, and had to do at first with matters affecting the county only. Later, however, the duties of the commission were enlarged by an act of the General Assembly (27 St. at Large, p. 761) requiring the town of Gaffney to turn over every year to the commission certain of its funds to be used and handled in the manner and for the purposes prescribed by the Act. For several years prior to April 5, 1928, the commission was composed of C. W. Hames, R. S. Lipscomb, and T. D. Daniel, the last-named acting as chairman. As thus constituted, it remained unchanged until the first part of the year 1930, when the incumbents were succeeded by J. N. Littlejohn, Nathan Littlejohn, and A. W. Love. Daniel, when a member of the commission, attended to all its business, even to the making of loans, without asking or receiving the consent or approval of the other members. During this time he was also cashier of the American State Bank, located at Gaffney, S. C., which

closed its doors on February 16, 1930, and was thereafter placed in the hands of receivers.

On April 2, 1928, the clerk of the town of Gaffney, in compliance with the law, transferred to Daniel, as chairman of the commission, $10,000, giving him a check for that amount against the funds of the city. On April 5, 1928, the defendant, having deposited this $10,000 to the commission's city account in the state bank, drew his check, as chairman, against that account in favor of himself for $1,-000, and deposited it to his own individual account in the bank, most of this sum being paid out the same day to meet personal checks which he had already given. Thereafter, he made loans of the remaining $9,000; and, still later, $2,000 of one of these loans having been repaid to him, and having been deposited to the commission's city account, he drew it out by two checks; one dated December 3, 1929, for $900, and the other February 10, 1930, for $1,100.

P. D. Mazick, a witness for the State, testified that he worked in the American State Bank as assistant cashier for about two years before it closed, and that the defendant was there, as its cashier, when the witness was first employed; that on April 5, 1928, as shown by the ledger sheets, the balance of the commission's city account in the bank was $10,000; that the records showed that Daniel, as chairman of the commission, on that day drew a check on this account, made payable to himself, for $1,000; and that this check was deposited to his own personal account and was charged against the sinking fund.

The defendant himself did not testify on his own behalf or offer any witness; but his counsel, on cross examination of the witness Mazick, introduced in evidence a paper appearing on its face to be a note for $1,000, dated April 5, 1928, payable at the American State Bank to the Sinking Fund Commission; there was written at the foot of this note the name of T. D. Daniel, which Mazick testified was Daniel's signature. This paper contained also a list of collateral (corporate stocks) purported to have been pledged

to secure its payment, but these securities were not produced or introduced in evidence. Mazick testified that they were of a value, on April 5, 1928, greater than the amount of the note, but that, as the note showed no numbers or other identifying marks of the certificates, he had no way of identifying them; that he did not know whether the alleged note had ever been satisfied or not; and all that he could swear to about it was that the signature of T. D. Daniel was genuine.

George G. Scott testified that he began an audit of the Cherokee County Sinking Fund Commission, which contained the city of Gaffney's account with that commission, shortly before the closing of the American State Bank; that he asked the defendant, in whose possession the records of the sinking fund commission were, for all its books, paid coupons, etc., and that Daniel turned over to him one book of original entry, which contained a record of the commission's receipts and disbursements; that he found no record of any $1,000 note, or of any disbursements of the $10,000 turned over to the defendant by the city clerk; that the defendant handed him two notes, payable to the sinking fund commission, one given by the Ross Land Company for $5,000, and the other by J. A. Carroll Grocery Company for $4,000; that in his examination of the bank's records, to which he had to resort for information in his audit, he saw the check for $1,000, dated April 5, 1928, which was charged against the commission's city account, and that, according to the records of the bank, the defendant had credited his personal account on the same date with $1,000; that Daniel did not, however, turn over to him, and that he did not know there was in existence, the $1,000 note introduced in evidence, and that he was unable to find or to trace in the commission's records any loan that was made by it, or by Daniel as its chairman, as representing this $1,000; that Daniel had never said anything to him about such a note, although they had discussed the records and the affairs of the commission several times, and that he had tried to get hold of the de-

fendant after the bank failed for a further interview, but without success; that he also found among the bank's records a deposit slip, which indicated that $2,000 of the loan made to the Ross Land Company had been collected; that against the deposit of this $2,000 two checks had been issued, one on December 3, 1929, payable to the defendant, for $900, and signed by Daniel as chairman of the commission, and one on February 10, 1930, payable to the order of cash, for $1,100, and signed "Sinking Fund Commission, Town of Gaffney, S. C."; and that he also found deposit slips of even date with the two checks, respectively, showing deposits of corresponding amounts to the personal account of the defendant.

Mazick, upon being recalled, testified that the $1,100 check was in the handwriting of the defendant. Counsel for Daniel thereupon introduced in evidence two papers in the form of notes, one for $900, dated December 3, 1929, and the other for $1,100, dated February 11, 1930, both payable to the sinking fund commission; the witness testifying that each of them had been signed by the defendant. He further testified, however, that he had no knowledge as to the execution of the notes, did not know where they had been, and had never seen them before the day of the trial; and the witness Scott testified to the same effect.

C. W. Hames testified that he was a member of the sinking fund commission at the time the defendant was its chairman; that he had never seen or heard of the note for $1,000, dated April 5, 1928, or either of the other notes introduced in evidence; that he had no knowledge of any loan made to the defendant by the commission, and had never discussed any such loan with him; that only one loan was submitted to the witness for approval, although it was the duty of the defendant, as chairman, to submit them; and that Daniel kept all the records, notes, and everything, and the witness had not at any time had any of them in his possession.

J. N. Littlejohn testified that none of the notes introduced in evidence had ever been turned over to the present commission by the former commission, or by any one else; that the records of the former commission turned over to the present commission contained no reference to any of these notes; and that there was nothing to show that the money represented by them was ever turned over to the present commission, nor any of the collateral listed in the notes.

With this evidence before him, the trial Judge was asked by the defendant, as we have said, to direct a verdict in his favor. The motion was overruled, the Court stating as the reason for his refusal that, under the facts and circumstances disclosed, the question of intent was one for the jury. We think this holding was entirely correct. It is not disputed that the defendant, as a member and the chairman of the sinking fund commission, and as such the custodian of trust funds, did, at the time named in the indictment, make personal use of $1,000 of these funds. It is true that he offered in evidence a paper purporting to be a note for $1,000 dated April 5, 1928, signed by him, and made in favor of the sinking fund commission, by which apparently he intended to show as a defense that, while he had checked out the money as contended by the State, he had simply made a loan of it, as chairman of the commission, to himself individually. Except for the date of the alleged note, however, there was no testimony tending to show when it was executed. The evidence was undisputed that the defendant did not tell any of his fellow members of the commission about this paper or consult them about the alleged loan, and that if such note was executed at the time the money was checked out by him for his own use, he did not thereafter place it in the hands of the auditor employed to audit the affairs of the commission, or turn it over, as an asset of the commission, as was his duty, to the new members of that body, when he was displaced. In addition, there was nothing to show that the alleged note was ever delivered to the sinking. fund com-

mission as constituted when defendant was its chairman, except the date of the paper, the fact that he was chairman of the commission at that date, and that it was in his possession at the time of the trial. We think that, without question, an issue of fact was made for the jury as to whether the alleged note was executed by the defendant at the time indicated by its date, as evidencing an intent that the $1,000 should be merely a loan he made, as chairman of the commission, to himself individually, or whether it was merely the result of an afterthought on his part and designed by him to meet and explain a serious situation.

The defendant also contends that the Court should have directed a verdict of not guilty, for the reason that there was no evidence that a demand had been made upon him for the property which was lawfully in his possession. The funds in his hands were trust funds, and, when the new members of the commission were appointed and qualified early in the year 1930, they were entitled to have all the property of the commission in the possession of the former members turned over to them, either upon or in the absence of demand, and the defendant, the chairman of the old commission, evidently understood the situation. There were delivered to the new members, ostensibly, all the papers, funds, assets, etc., of the commission, and they had a perfect right to assume that the old members, knowing their duty in that respect, had fully performed it. In these circumstances, further demand was unnecessary. We do not think that the cases cited in support of appellant's view are in point under the facts here presented.

From what we have said, it is evident that the Court committed no error of law in refusing defendant's motion for a new trial, made upon the same grounds as the motion for a directed verdict.

The action of a trustee in making a loan of trust funds to himself merits the severest condemnation. The statutes cited by the State, under which the defendant was indicted and tried, gave to him no authority to lend, as an individual

member, the trust funds placed in the hands of the commission; that power was vested in the commission alone. Certainly there is not found in the statutes before us the remotest suggestion or implication that he was authorized or empowered to make such a loan to himself. However, with this passing reference, we have refrained from discussing its propriety or legality, for the reason that the State, on trial of the defendant and in argument here, conceded that, under applicable statutory provisions (to which we have not been referred), he had legal authority, as chairman of the commission, to lend its funds to himself as an individual, and the trial Judge in his charge adopted and gave the defendant the benefit of that view.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Blease and Messrs. Justices Carter and Bonham concur.

Mr. Justice Cothran did not participate on account of illness.